UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V. LORRAINE MARTINEZ, | No.  2:20-cv-02068 WBS CKD (SS) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the undersigned Magistrate Judge will recommend that plaintiff's motion for summary judgment be granted except as to remedy, and the Commissioner's motion to remand (which concedes harmful error by the ALJ) be granted.

BACKGROUND

Plaintiff, born in 1973, served in the military for twelve years and, after leaving service in 2012, went into business with a military colleague and worked a few hours a week as a bookkeeper until 2015.  Administrative Transcript ("AT") 34, 47-50.  She applied on March 22, 2017 for DIB, alleging disability beginning April 27, 2015.  AT 22.  Plaintiff alleged she was

unable to work due to a combination of impairments including chronic fatigue, joint pain, depression, anxiety, and pain in her right shoulder, hip, knee, neck, and back.  AT 69, 87, 203, 301.  In a decision dated January 9, 2020, the ALJ determined that plaintiff  was not disabled.[1]  AT 22-36.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.
>
> 2.  The claimant did not engage in substantial gainful activity from her alleged onset date of April 27, 2015 through her date last insured of December 31, 2018.
>
> 3.   Through the date last insured, the claimant had the following severe  impairments:  fibromyalgia;  chronic  fatigue  syndrome; hypothyroidism; depression; anxiety.

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that she was limited to no more than occasional climbing, balancing, stooping, crouching, drawling, and kneeling; she was limited to no more than frequent handling, fingering, pushing, or pulling with her bilateral upper extremities; she had to avoid concentrated exposure to vibrations, unprotected heights, moving machinery, and similar hazards; she could have no more than occasional contact with supervisors, co-workers, and the general public; and she had to avoid working around crowded areas.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XX/XX/1973, which is defined as a younger individual 45-49, on the date the application was filed.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.[2]

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 25, 2017, the alleged onset date, through December 31, 2018, the date last insured.

AT 24-35.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in evaluating the medical opinions; (2) the ALJ erroneously rejected the VA disability rating; (3) the ALJ erred in assessing plaintiff's credibility; (4) the ALJ's hypothetical questions to the vocational expert were based on an erroneous residual functional

---

[2] Relying on VE testimony, the ALJ found that plaintiff would have been able to perform the requirements of representative occupations such as office helper, housekeeping cleaner, and cafeteria attendant, all at the light exertional level.  AT 35.

1    capacity; and (5) the ALJ's decision is constitutionally defective.

2    LEGAL STANDARDS

3         The court reviews the Commissioner's decision to determine whether (1) it is based on

4    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

10   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

12   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

13   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

15   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

16   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

17   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

18   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

19   administrative findings, or if there is conflicting evidence supporting a finding of either disability

20   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

21   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

22   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

23   ANALYSIS

24        A.  Medical Opinions

25        Plaintiff asserts that the ALJ erred in evaluating the opinions of several doctors, including

26   treating rheumatologist Dr. Anhvu Nguyen and consultative examiner Dr. H. Afupwape.  Plaintiff

27   argues that the ALJ also erred in rejecting the opinions of U. S. Veterans Affairs Department

28   (VA) providers Dr. Elizabeth Brandon, Dr. Baljit Atwal, and Nurse Practitioner Jorge Garcia.

4

1   See AT 32-33.

2       **VA Providers.**  In 2015, Dr Brandon opined that, due to chronic fatigue syndrome,

3   plaintiff was limited to short-term sedentary work, at her own pace, with the ability to adjust

4   hours according to her symptoms, and could not perform a regular eight-hour day of sedentary

5   work.  AT 33, citing AT 545.  In 2019, Dr. Atwal opined that plaintiff had occupational and

6   social impairment with reduced reliability and productivity due to persistent depressive disorder

7   with anxious distress.  AT 33, citing AT 840.  Also in 2019, NP Garcia opined that plaintiff's

8   chronic fatigue syndrome was "debilitating" and would incapacitate her for at least six weeks per

9   year.  AT 33, citing AT 850-51.  The ALJ accorded these providers' opinions little weight, citing

10  a lack of "quantification and specificity."  AT 33.  The ALJ found these opinions to be "based on

11  one-time examinations" and "inconsistent with the longitudinal medical record."  AT 33.

12      **Consultative examiner.**  Dr. Afuwape examined plaintiff in 2017 and diagnosed

13  "fibromyalgia with chronic fatigue and chronic pain involving the shoulders, back, hips, and

14  knees."  AT 31, citing AT 610-14.  The doctor opined that plaintiff could stand/walk up to four

15  hours in an eight-hour day and had no sitting limitations; she could lift/carry/push/pull 50 pounds

16  occasionally and 25 pounds frequently; and she could frequently perform all postural and

17  manipulative activities.  AT 31, citing AT 610-614.  The ALJ found Dr. Afuwape's opinion

18  "somewhat persuasive" as the "opinion for a range of medium work was generally consistent with

19  his own largely unremarkable physical examination findings[.]"  AT 31.  However, the ALJ

20  found that plaintiff could stand/walk at the light level (up to six hours per day) rather than the

21  four hours opined by Dr. Afuwape, reasoning that "the record indicates that [her] symptoms of

22  pain and fatigue were fairly well treated with chiropractic treatment" and noting normal imaging

23  studies and exam findings in some areas.  AT 32.  The ALJ also found that plaintiff was limited to

24  light lifting/carrying, not medium-level lifting/carrying as Dr. Afuwape opined.  AT 32.

25      **Treating specialist.**  Dr. Nguyen, who treated plaintiff in the VA rheumatology clinic

26  from 2016 to 2019, completed a Fibromyalgia Residual Functional Capacity Questionnaire in

27  2018.  He opined that plaintiff met the American College of Rheumatology criteria for

28  fibromyalgia and diagnosed her with chronic pain and fatigue, citing symptoms including panic

attacks, depression, anxiety, frequent and severe headaches, multiple tender points, and pain throughout her body.  AT 637.   Dr. Nguyen opined that plaintiff's pain and other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks; that she could sit, stand, or walk for less than two hours in an eight-hour workday; and that she was likely to be absent more than four days per month as a result of her impairments.  AT 32, 639-641.

The ALJ found Dr. Nguyen's opinion unpersuasive, citing conflicts with other evidence of record, plaintiff's hearing testimony, and presentation as "attentive with normal thought processes."  AT 32.  "As for the off-task and missed work portion of Dr. Nguyen's report, no explanation or clinical notes were referenced in support of these opinions, so it is unclear what these are based upon.  Overall," the ALJ wrote, "Dr. Nguyen's opinions significantly overstate the claimant's limitations given the other evidence of record, and are not even consistent with his own chart note from August 2018."  AT 32-33.

1.   Applicable Legal Standard

For applications filed before March 27, 2017[3], the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.

In contrast, a contradicted opinion of a treating or examining professional may be rejected

_____

[3] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted

by a supported examining professional's opinion (e.g., supported by different independent clinical

findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir.

1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ

need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v.

Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported

opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a non-examining

professional, without other evidence, is insufficient to reject the opinion of a treating or

examining professional.  Lester, 81 F.3d at 831.

### 2.  Parties Agree ALJ Erred

Defendant concedes that the ALJ applied the wrong regulations in evaluating the medical

opinions in this case.  Plaintiff filed her DIB application on March 22, 2017.  AT 201.  For all

applications filed before March 27, 2017, an ALJ must apply 20 C.F.R. § 404.1527, which

underpinned the older medical opinion standard outlined above.  However, the ALJ evaluated the

medical opinion evidence in this case under the revised regulation, 20 C.F.R. § 404.1520c.  See

AT 30 ("[T]he undersigned has carefully considered the medical opinion evidence and has

assigned each opinion weight according to its consistency with the objective medical evidence of

record, testimony, and other opinion evidence.").

Defendant further concedes that "[t]he ALJ's incorrect application of the regulation was

not harmless error, because the change in the regulations embodied in 20 C.F.R. § 404.1520c

marks a significant shift in Social Security disability law that eliminates decades of case law from

the Ninth Circuit and elsewhere regarding the treating source rule and the concept of a hierarchy

of medical source opinions."  (ECF No. 18 at 3.)  Previously, the Ninth Circuit recognized "a

hierarchy among the sources of medical opinions."  Tommasetti v. Astrue, 533 F.3d 1035, 1041

(9th Cir. 2008).  Those who treated a claimant were treating physicians, those who examined but

did not treat the claimant were examining physicians, and those who neither examined nor treated

the claimant were nonexamining physicians.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

1    This hierarchy was known as the treating physician rule, which generally afforded greater weight

2    to the opinions of treating physicians.  Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001),

3    as amended on reh'g (Aug. 9, 2001).  However, it is not clear to what extent, if any, the treating

4    source rule remains in effect for cases governed by the new regulations.  See, e.g., Jones v. Saul,

5    No. 2:19-cv-01273 AC, 2021 WL 620475 at *9 (E.D. Cal. Feb. 16, 2021) (concluding that the

6    new regulations displaced case law on the treating source rule), citing Lambert v. Saul, 980 F.3d

7    1266 (9th Cir. 2020).  In the instant case, the ALJ's decision affords no particular importance to

8    the fact that Dr. Nguyen was a treating source, even though plaintiff's application should have

9    been assessed under the old rules.

10          Under the treating source rule, the opinion of a treating rheumatologist assessing

11   symptoms of fibromyalgia is especially significant, given "fibromyalgia's unique symptoms and

12   diagnostic methods[.]"  Revels v. Berryhill, 874 F.3d 648, 662 9th Cir. 2017), citing Social

13   Security Ruling ("SSR") 12-2p and Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004).  In

14   Benecke, concerning a claimant diagnosed with fibromyalgia, the Ninth Circuit gave treating

15   rheumatologists' opinions

16                greater weight than those of the other physicians because it is an
17                "opinion of a specialist about medical issues related to his or her area
                  of specialty," citing 20 C.F.R. § 404.1527(d)(5). Rheumatology is
18                the relevant specialty for fibromyalgia.  Specialized knowledge may
                  be particularly important with respect to a disease such as
                  fibromyalgia that is poorly understood within much of the medical
19                community. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996)
                  (describing fibromyalgia as an "elusive and mysterious" disease).
20

21   379 F.3d at 594 n.4 (some internal citations omitted).  Here, the ALJ did not acknowledge Dr.

22   Nguyen's area of specialty as it related to the treating source rule that should have been applied.

23          In short, the parties agree that the ALJ's failure to apply the correct medical opinion

24   standard was harmful error warranting remand.

25          B.  Veterans Affairs Disability Rating

26          Defendant further concedes that the ALJ erred in evaluating the VA disability ratings

27   under the applicable old regulations. The VA granted plaintiff a 70% service-connected disability

28   for persistent depressive disorder, moderate to severe with anxious distress, effective October 8,

8

2013.  AT 227, 230-232.  The VA also granted plaintiff a 100% service-connected disability for chronic fatigue syndrome, effective April 27, 2015, which coincides with the alleged disability onset date.  AT 227, 238-241.

The ALJ assessed the second VA rating as follows:

> The claimant has a Veterans Affairs (VA) service-connected disability rating of 100 percent.[4]  The rating of the VA has been considered in assessing the claimant's [RFC].  However, the VA and the SSA make determinations of disability based on a different set of laws and regulations. . . .  While the VA's determination is considered, it is not binding. . . . The undersigned has independently weighed the evidence, including the evidence from the VA doctors, and arrives at a different conclusion than that of the VA doctors.

AT 33.

As with medical opinions, VA assessments for applications filed prior to March 27, 2017 are governed by different regulations than applications filed afterwards.  As a court in this district has explained:

> Under prior regulations and case law, an ALJ not only was required to consider the VA's determination in reaching a disability determination, but also was to give it "great weight," or "less weight ... if he gives persuasive, specific, valid reasons for doing so that are supported by the record."  See McCartey v. Massanari, 298 1072, 1076 (9th Cir. 2002) . . . .  However, under new regulations, which apply to claims filed on or after March 27, 2017, the ALJ is not required to articulate "any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits."  20 C.F.R. § 404.1504. Thus, the new regulation appears to remove any requirement for an ALJ to discuss another agency's rating. . . .
>
> Instead, the new regulations require the ALJ to consider "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision."  20 C.F.R. § 404.1504. This aligns with the requirement from McCartey—as both case law and the regulations direct the analysis away from an agency's rating and toward the underlying evidence.

Dubord v. Comm'r, 2:20-cv-634 KJM KJN, 2021 WL 2661879, *3 (E.D. Cal. June 29, 2021), report and recommendation adopted by 2021 WL 4285167 (E.D. Cal., Sep. 21, 2021).

---

[4] Citing AT 221-287.

1    Here, plaintiff argues that the ALJ failed to provide valid and persuasive reasons for

2    rejecting the VA disability ratings and seeks a remand.  Defendant agrees that "the ALJ did not

3    fully explain why he had reached a different conclusion than the VA" as required under the

4    previous regulations, and that "remand is warranted in order for the ALJ to further explain his

5    reasons for rejecting the VA disability ratings."  (ECF No. 18 at 13.)  As the parties agree that

6    remand is appropriate due to significant errors in evaluating the medical opinions and VA ratings,

7    the court does not reach the remaining claims.

8        C.   Remedy on Remand

9        Plaintiff argues that the undersigned should remand for benefits, applying the credit-as-

10   true rule, while defendant seeks remand for further proceedings.

11       With error established, the court has the discretion to remand or reverse and award

12   benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

13   under the "credit-as-true" rule for an award of benefits where:

14           (1) the record has been fully developed and further administrative
             proceedings would serve no useful purpose; (2) the ALJ has
15           failed to provide legally sufficient reasons for rejecting evidence,
             whether claimant testimony or medical opinion; and (3) if the
16           improperly discredited evidence were credited as true, the ALJ
             would be required to find the claimant disabled on remand.
17

18   Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  Even where all the conditions for the

19   "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when

20   the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

21   the meaning of the Social Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d

22   403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

23   proceedings would serve no useful purpose, it may not remand with a direction to provide

24   benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

25   2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

26   proper approach is to remand the case to the agency.").

27       Here, the record as a whole creates serious doubt as to whether the claimant was, in fact,

28   disabled during the relevant period.  The ALJ applied the wrong standard to evaluate several

10

medical opinions that contradicted each other and found plaintiff capable of varying levels of work.  The ALJ also failed to explain in any detail why he rejected a 100% disability rating by the VA as of plaintiff's alleged disability onset date.  However, it is not clear whether, had the ALJ applied the correct legal standard when evaluating the medical opinions and VA rating, there was substantial evidence to support a finding of nondisability, as defendant argues.  The parties reasonably dispute whether the ALJ erred in finding plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms somewhat inconsistent with the objective medical evidence and other evidence of record.  See AT 27-30.  In light of the complexity of the evidence of fibromyalgia-related limitations and the need to reassess all medical opinions under the correct standard, the undersigned finds remand for further proceedings would serve a useful purpose in this case.[5]

On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC.  The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (ECF No. 13) be granted, but denied as to remedy;

2.  The Commissioner's cross-motion to remand (ECF No. 18) be granted; and

3.  Judgment be entered for the Plaintiff.

---

[5] The parties note that they engaged in good-faith discussions about a voluntary remand, but could not agree on the exact terms.

1          These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5     "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

6    within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>

7    <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8    Dated:  June 17, 2022

9                                                        _____
                                                          CAROLYN K. DELANEY
10                                                       UNITED STATES MAGISTRATE JUDGE

11

12

13

14    2/martinez2068.ssi.ckd.f&rs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12